**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ORONDE COLEMAN, | Case No.: 2:25-cv-01721-APG-MDC |
| Plaintiff | **Screening Order for Complaint** |
| v. | [ECF No. 1-1] |
| LVMPD, et al., | |
| Defendants | |

Oronde Coleman, who is a pretrial detainee in the Clark County Detention Center (CCDC), has filed a civil rights complaint under 42 U.S.C. § 1983 and an application to proceed in forma pauperis (IFP). ECF Nos. 1, 1-1. I grant the IFP and screen Coleman's civil rights complaint.

**I.    SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, the Prison Litigation Reform Act requires a federal court to dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).  Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint.  When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000).  Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle them to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).  In making this determination, the court takes as true all allegations of material fact stated in the complaint and construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).  Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A formulaic recitation of the elements of a cause of action is insufficient. *Id*.

A reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

All or part of a complaint filed by an incarcerated person may therefore be dismissed *sua sponte* if the claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.    SCREENING OF COMPLAINT

Coleman generally sues Las Vegas Metropolitan Police Department (LVMPD) and ViaPath, the owner and provider of android tablets at CCDC, for events taking place at CCDC. ECF No. 1-1 at 1-2. Coleman brings one claim and seeks monetary damages.

Coleman alleges the following. He is a religious member of the House of Yahweh, which has a charter from the State of Texas and was officially recognized in 1983. Coleman needs the Book of Yahweh and the Book of Yahweh Study Guide to worship his religion. However, the ViaPath tablets do not contain either of those ebooks even though they have other religious books for other religions such as Protestant, Catholic, Muslim, Jewish, Latter-Day

3

Saints, Orthodox Hindu, Buddhist, Jehovah's Witness, Moorish American, Nation of Islam, and Sundar Gutka.  LVMPD had approved these religious texts to be on the android tablet but discriminated against the House of Yahweh.

When Coleman reached out to ViaPath to add the Book of Yahweh onto ebooks, ViaPath responded that it was not a recognized religion, and they would not add it to the contents of the tablets.  Coleman told ViaPath that he needed the two books to give praise to his heavenly father and his son in their rightful names.  ViaPath told Coleman to write a grievance to LVMPD's religious services unit.  Years ago, Coleman wrote grievances to the religious services unit, who told him they do not stock those books.

Coleman brings claims for First Amendment exercise of religion, unspecified Fourteenth Amendment violations, unspecified violations of the Nevada Constitution, and violations of Coleman's general "civil rights" and "human rights."  I interpret the allegations as claims for First Amendment free exercise of religion and Fourteenth Amendment equal protection violations.  I dismiss all other claims without prejudice for lack of specificity.

Although Coleman could potentially state colorable First Amendment free exercise of religion and Fourteenth Amendment equal protection claims, he does not do so in his complaint because he has not established that ViaPath and LVMPD are the parties he should be suing.  I thus dismiss the complaint but grant Coleman leave to amend.

**A.     ViaPath**

To sue ViaPath under § 1983, Coleman must establish that ViaPath was acting "under color of state law." *E.g.*, *West v. Atkins*, 487 U.S. 42, 48 (1988).  Based on Coleman's allegations, ViaPath appears to be a private entity that contracts with LVMPD to provide inmates

4

with tablets.  It also appears that ViaPath's contract with LVMPD requires LVMPD's approval before ViaPath permits inmates access to certain ebooks.

The Supreme Court has noted that "the fact that the government licenses, contracts with, or grants a monopoly to a private entity does not convert the private entity into a state actor— unless the private entity is performing a traditional, exclusive public function." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 814 (2019).  "Numerous private entities in America obtain government licenses, government contracts, or government-granted monopolies.  If those facts sufficed to transform a private entity into a state actor, a large swath of private entities in America would suddenly be turned into state actors and be subject to a variety of constitutional constraints on their activities." *Id*. at 814-15.  Because a private party generally does not act under color of state law, it will only be deemed to be a state actor in rare circumstances. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999).  "When addressing whether a private party acted under color of law, [courts] start with the presumption that private conduct does not constitute governmental action." *Id.*

Coleman's complaint does not allege how ViaPath is a state actor other than its apparent contract with LVMPD.  This alone is insufficient to establish that ViaPath is a state actor who deprived Coleman of his federal rights.  I dismiss ViaPath without prejudice.

**B.     LVMPD**

With respect to LVMPD, it is a political subdivision of the state and may sue or be sued in its own name. Nev. Rev. Stat. § 280.280(4).  However, to state a colorable claim against LVMPD, a plaintiff must allege a theory of municipal liability.  A municipality may be found liable under 42 U.S.C. § 1983 only where the municipality itself causes the violation at issue. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. New York City Dept.*

*of Social Services*, 436 U.S. 658 (1978)). To state a claim for municipal or county liability, a plaintiff must allege that he suffered a constitutional deprivation that was the product of a policy or custom of the local government unit. *City of Canton*, 489 U.S. at 385. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *See Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipalities are not vicariously liable under § 1983 for their employees' actions. *Id.* at 60.

Coleman does not allege that his inability to obtain House of Yahweh religious books is due to a LVMPD custom or policy. Instead, he alleges that he wrote to unspecified persons in the religious services unit and those persons responded that they did not stock those books. This is insufficient to establish a custom or policy. I dismiss LVMPD without prejudice.

**C.     Leave to Amend**

Although I grant Coleman leave to amend, I do not grant him leave to amend in any way that he sees fit. Coleman has leave to decide who he wants to sue in this case and to allege true

facts to show First Amendment free exercise of religion[1] and/or Fourteenth Amendment equal protection[2] violations.  I do not give Coleman leave to assert new claims.

If Coleman chooses to file an amended complaint, he is advised that a first amended complaint replaces the complaint, so the first amended complaint must be complete in itself. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal).  This means that the first amended complaint must contain all facts and claims and identify all defendants that he intends to sue.  He must file the first amended complaint on this court's

---

[1]    If Coleman chooses to amend, he should take note of the following law: The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof.  U.S. Const. amend. I.  The United States Supreme Court has held that inmates retain protections afforded by the First Amendment "including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  "In general, a plaintiff will have stated a free exercise claim if: (1) 'the claimant's proffered belief [is] sincerely held; and (2) 'the claim [is] rooted in religious belief, not in purely secular philosophical concerns.'" *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015).  "[L]imitations on [an inmate's] exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives–including deterrence of crime, rehabilitation of prisoners, and institutional security." *Id.*  "A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015).

[2]    If Coleman chooses to amend, he should take note of the following law: The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all similarly situated persons be treated equally under the law. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  To state an equal protection claim, a plaintiff must allege facts demonstrating that defendants acted with the intent and purpose to discriminate against him based upon membership in a protected class, or that defendants purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

approved prisoner-civil-rights form, and it must be entitled "First Amended Complaint." Coleman must follow the instructions on the form. He need not and should not allege very many facts in the "nature of the case" section of the form. Rather, in each claim, he should allege facts sufficient to show what each defendant did to violate his civil rights. He must file the amended complaint by **August 10, 2026**. If Coleman does not file an amended complaint curing the stated deficiencies by that date, I close this case.

**III.    CONCLUSION**

I THEREFORE ORDER that Coleman's IFP application (ECF No. 1) is **granted**. Coleman will **not** be required to pay an initial installment fee. Nevertheless, the full filing fee will still be due under 28 U.S.C. § 1915. Coleman is permitted to maintain this action to conclusion without the necessity of prepayment of fees or costs or the giving of security therefor.

I FURTHER ORDER the Clark County Detention Center to forward payments from the account of **Oronde Coleman, CCDC #7040403** to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits (in months that the account exceeds $10.00) until the full $350 filing fee has been paid for this action. *See* 28 U.S.C. § 1915. If Coleman should be transferred and become under the care of the Nevada Department of Corrections, the CCDC Accounting Supervisor is directed to send a copy of this order to the attention of the Chief of Inmate Services for the Nevada Department of Corrections at formapauperis@doc.nv.gov, indicating the amount that Coleman has paid toward his filing fee, so that funds may continue to be deducted from Coleman's account. The Clerk will send a copy of this order to the Finance Division of the Clerk's Office and to the **CCDC Accounting Supervisor, 330 S. Casino Center Blvd., Las Vegas, NV 89101.**

I FURTHER ORDER that, even if this action is dismissed or is otherwise unsuccessful, the full filing fee will still be due. 28 U.S.C. §1915.

The Clerk of the Court is directed to: (a) file the complaint (ECF No. 1-1); (b) send Coleman a courtesy copy of his complaint (ECF No. 1-1); and (c) send Coleman the approved form for filing a § 1983 complaint with instructions.

I FURTHER ORDER that the complaint (ECF No. 1-1) is dismissed in its entirety without prejudice with leave to amend for failure to state a claim.

I FURTHER ORDER that if Coleman chooses to file an amended complaint curing the deficiencies of his complaint as outlined in this order, he must file the first amended complaint by **August 10, 2026**.

I FURTHER ORDER that if Coleman does not to file a first amended complaint curing the stated deficiencies of the complaint, I will close this case.

Dated: July 8, 2026

_____
Andrew P. Gordon
Chief United States District Judge

9